IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

RON NICHOLS, et al.                                                                                    PLAINTIFFS

vs.

NO: 3:03cv00169 JFF

AMERICAN CYANAMID CO.
and BASF CORPORATION                                                                        DEFENDANTS

## MEMORANDUM AND ORDER

### Background

The facts in this case are not disputed. On or about May 2 through May 13, 2000, Plaintiffs planted approximately 2,534.1 acres of cotton.[1] Immediately behind the planter, Plaintiffs applied Prowl 3-3 EC herbicide to all but 50 acres of the cotton in accordance with label directions and the express recommendation of Kim Mayberry, field representative for American Cyanamid, for the control of grass in the emerging cotton crop.

The cotton seed planted and grown by Plaintiffs germinated and emerged into acceptable stands of cotton. However, in the latter part of May 2000, Plaintiffs sustained substantial rainfall on their emerging cotton crop. Following the rain, Plaintiffs noticed that the cotton plants were failing to thrive and mature as healthy cotton plants. On or about June 10, 2000, Plaintiffs contacted Kim Mayberry and requested her opinion as to the cause of the stunting and stacked nodes. Initially Mayberry thought it might be Prowl damage. A short time later she and Greg Stapelton, a technical representative for American Cyanamid, returned to inspect the crop, ultimately determining that the

---

[1] The land under cultivation was in Clay County, Arkansas and Dunklin and Stoddard Counties, Missouri.

damage was not the result of the application of Prowl 3.3 EC herbicide. Plaintiffs contacted Dr. Michael Milam, who also came to the farm and viewed the failing cotton.[2] Due to the failure of the cotton to recover, Plaintiffs subsequently destroyed 2,211.7 acres of cotton and replanted the acreage with soybeans. Of the approximately 322.4 acres of cotton not destroyed, 51.0 acres did not receive an application of Prowl 3.3 EC herbicide and yielded approximately 764.9 pounds of lint per acre. The remaining 271.4 acres not destroyed produced approximately 332.4 pounds of lint per acre.

Plaintiffs bring this suit alleging negligence, breach of express warranty, misrepresentation, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, and strict liability.

**Defendants' Motion for Summary Judgment**

Defendants claim they are entitled to summary judgment (DE# 76) in this case. Plaintiffs have filed a response (DE# 91) and Defendants have replied (DE# 97).

Defendants assert the following:[3]

Plaintiffs lack admissible evidence to support their negligence claims.

Plaintiffs' claims of breach of express warranty, of the implied warranties of merchantability and of fitness for particular purpose should be dismissed as a matter of law because Defendants

---

[2] Defendants' pending motion *in limine* regarding Milam will be addressed by separate order.

[3] Defendants have not asserted that any of Plaintiffs' claims are preempted under the Federal Insecticide, Fungicide and Rodenticide Act. 7 U.S.C. §§ 1236, et seq. (FIFRA). Under FIFRA, any claim which has the practical effect of causing a defendant to alter its label to avoid liability is preempted. *See Hardin v. BASF,* 397 F.3d 1082 (8th Cir. 2005). The undersigned finds no such claims made in this case.

effectively disclaimed such warranties.

Plaintiffs' claim of breach of express warranty based upon alleged statements contained in the Prowl label should be dismissed as a matter of law, because Plaintiffs cannot establish that Defendants made the specific "affirmation of fact, or promise" in the Prowl label that Plaintiffs allege Defendants breached.

Plaintiffs' claim of misrepresentation should be dismissed as a matter of law because Plaintiffs cannot present evidence that Defendants made false representations of material fact with knowledge that the alleged representations were false and with the intent that Plaintiffs rely on such false representations. Plaintiffs could not have justifiably relied upon such representations because of an express disclaimer contained in the Prowl label.

Plaintiffs' strict liability claim should be dismissed as a matter of law because Plaintiffs cannot present evidence that the product at issue was supplied in a defective condition which rendered it unreasonably dangerous.

Finally, Defendants assert that Plaintiffs' claim for damages in excess of the return of the purchase price of the Prowl allegedly used by Plaintiffs should be dismissed as a matter of law because Defendants effectively limited Plaintiffs' remedies and Defendants' liabilities under all of Plaintiffs' causes of action.

### **Standard**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County*, 144 F.3d 1131, 1134 (8th Cir. 1998). Under Fed R. Civ. P. 56(e), a party opposing a motion for summary judgment cannot rest on the allegations of his complaint but must come forward and designate specific facts, by affidavit or otherwise, showing that a genuine material issue of fact exists for trial. *Celotex*, 477 U. S. at 324. The mere existence of <u>some</u> alleged factual dispute will not defeat a properly supported motion for summary judgment because Rule 56(c) requires "that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson*, 477 U. S. at 247-48. Material facts are those which could actually affect the outcome of the lawsuit. *Webb*, at 1135. To defeat a motion the nonmovant must do more than "simply show there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once the movant points out an absence of proof on an essential element of the nonmovant's case, the burden shifts to the nonmovant to provide evidence to the contrary. *Celotex*, 477 U.S. 317, 322-23 (1986). At summary judgment it is insufficient for Plaintiff merely to reassert ultimate facts without providing any support for the contentions. Further, in evaluating the evidence at the summary judgment stage, the court considers only those facts which are supported by admissible evidence. *JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 737 (8th Cir.1995) ("[A] successful summary judgment defense requires more than argument or re-allegation; [the party] must demonstrate that at trial it may be able to put on admissible evidence proving its allegations."); *Walker v. Wayne County, Iowa*,

850 F.2d 433, 434 (8th Cir.1988) (holding that courts considering a summary judgment motion "may consider only the portion of the submitted materials that is admissible or usable at trial"), *cert. denied*, 488 U.S. 1008 (1989).

**Analysis**

The court finds that Plaintiffs have put forth facts to create a jury issue sufficient to defeat Defendants' motion for summary judgment as to their claims of negligence and misrepresentation. Plaintiffs allege the Defendants (via Mayberry's statements) warranted that Prowl was "safe" for cotton and failed to properly warn them (through the statements of Mayberry) of the risks associated with the pre-emergence application of the herbicide to cotton if applied at or about heavy rainfall. The law allows a finding of more than a single proximate cause. A party may establish negligence by direct or circumstantial evidence. *Mangrum v. Pigue*, 359 Ark. 373, 198 S.W. 3d 496 (2004). In *Mangrum*, a farmer brought action against a neighbor and a cropduster pilot, alleging that pilot's negligent spray of chemicals on the neighbor's land damaged the farmer's corn crop. The court found that the plaintiff's case failed because he had no witnesses to the alleged negligent spraying or expert opinion that the damage came from the spray or that the spray drifted outside its intended target. However, the court noted that other crop damage spray cases had been allowed to go to the jury on negligence issues. In those cases, *Burns v. Vaughn,* 216 Ark. 128, 129, 224 S.W.2d 365, 366 (1949);*Sullivan v. Voyles,* 249 Ark. 948, 462 S.W.2d 454 (1971); *W.B. Bynum Cooperage Co. v. Coulter,* 219 Ark. 818, 244 S.W.2d 955 (1952), there was witness testimony regarding wind direction, alleged pilot negligence and witnesses who watched the colored spray drift past its intended target.

Plaintiffs present the deposition testimony of Nichols testifying that he administered Prowl

behind the planter wheel, pursuant to the application directions of Defendants' sales agent and in reliance on her assertions that Prowl was safe, to all acreage subsequently exhibiting damage. The 50 acres and some-odd rows not receiving Prowl continued to grow, ultimately producing almost double the yield of the Prowl damaged cotton acres which were allowed to grow to harvest. Nichols's testimony and the testimony of his cotton scout, Barry Aycock asserts that the lack of Prowl was the only differing variable.[4] Defendants do not dispute that Mayberry intially told Nichols that the cotton showed classic signs of Prowl damage or that she told Nichols that she planned to submit a claim for Prowl damage on his behalf. Defendants assert that rain, seedling disease, chemical carryover and PH issues caused the cotton damage and present evidence to so state. Plaintiffs present evidence in dispute of Defendants' assertions. Such is sufficient to present an issue of fact for determination by the jury.

The court finds that Defendants' motion should be granted as to Plaintiffs' claims of strict liability. Plaintiffs have not submitted any admissible evidence to prove that the Prowl was supplied in a defective condition which rendered it unreasonably dangerous.

Plaintiffs appear to abandon their claims of warranty based on Prowl label language by not

---

[4] In *Associated Seed Growers v. Johnson*, 227 Ark. 235, 240, 297 S.W. 2d 934, 936 (Ark. 1957) the court upheld introduction of evidence to the effect that other beans of the same kind but of a different variety were planted at the same time, under the same conditions, on land adjacent to that on which the Logan beans were planted; that all of the beans were fertilized and cultivated in a like manner, and that all of the beans developed properly except the Logan beans from the seed obtained from appellant. The evidence was admissible as tending to show that the reason the Logan beans failed to develop properly was due to something other than the condition of the soil and the cultivation of the crop.

responding to Defendants' motion for summary judgment on this issue. Plaintiffs do not identify any language in the label which they claim expressly or impliedly warranted the safety of Prowl for cotton. Additionally, the court finds that the disclaimer language found in the Prowl label is adequate to meet the code requirements of both Arkansas and Missouri. The Code contains two requirements to effectively disclaim the implied warranty of merchantability and the implied warranty of fitness for particular use : the disclaimer must 1) mention merchantability and 2) be conspicuous. Ark. Code Ann. § 4-2-316(2); Mo. Stat. Ann. § 400.2-316(2). Plaintiffs argue that whether the disclaimer meets the Code's requirements should be decided by a jury. However, the Arkansas Code provides that:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals ... is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.... **Whether a term or clause is 'conspicuous' or not is for decision by the court**. A.C.A. § 4-1-201(10) (emphasis added).

Mo. Stat. Ann. § 400.1-201(10) defines conspicuous as "written that a reasonable person against whom it is to operate ought to have noticed it."

There is no genuine issue of fact as to whether or not the language is conspicuous. The Disclaimer section of the label is clearly so labeled and the language is in all capital letters with slightly bold print. It also mentions merchantability. This court finds that the disclaimer language found on the label is both conspicuous and mentions merchantability. Therefore, the disclaimer is effective to defeat Plaintiffs' claims of implied warranty of merchantability and the implied warranty of fitness for particular use. Defendants' motion is granted as to these claims.

This court finds that the Prowl language disclaimers meet the requirements of the Code and

Case 3:03-cv-00169-JFF   Document 99   Filed 08/01/07   Page 8 of 11

are effective as to Plaintiff's claims of implied warranties; however, Plaintiffs' claims of express verbal warranties made by Mayberry could operate to render the disclaimer of express warranties ineffective. Plaintiffs assert that they justifiably relied on the verbal misrepresentations of Mayberry that Prowl was safe if applied in the manner she prescribed. They assert that Mayberry knew that Prowl could harm cotton if applied in such manner at the time she made the statements on which they relied and that she failed to warn them of such potential damage. Defendants do not dispute that the Prowl was applied as Mayberry directed, but assert that the language in the Prowl label effectively disclaims any express or implied warranties made by Mayberry. They also assert that Nichols cannot prove that he justifiably relied on her verbal representations.

In a strikingly similar fact situation, the Arkansas Supreme court addressed this issue. See *Ciba-Geigy Corporation v. Alter*, 309 Ark. 426, 834 S.W. 2d 136 (Ark. 1992). In early 1985, Ron Wulfkuhle and John McLeod, two Ciba-Geigy sales representatives, met with several Arkansas County farmers to promote the use of Dual. Plaintiff Alter was present at the meeting. Alter testified the salesmen told him Dual would control weeds longer at a cheaper price than other herbicides. They also said Dual was safe and would not injure a corn crop. Although Wulfkuhle knew that Dual could damage a corn crop if the crop received heavy moisture after planting, he did not tell Alter about that possibility. Hazards associated with Dual use were not mentioned. Alter testified he generally read the labels accompanying herbicides, but he could not recall whether he read the precautionary language on the Dual label. Alter did not read the Dual advertising materials, but purchased Dual in reliance on the representations made by the salesmen. He began planting his 997.8 acre corn crop on March 19th. A week and a half later Alter applied Dual to the crop. Midway through the Dual application, a heavy rain fell. Alter noticed severe injury to his corn crop in early

8

May. Some corn was simply not coming up, and other plants looked twisted and "buggywhipped." The crops treated with Dual nearest the time of the rainfall were severely injured, but those treated with Dual after the rainfall were not injured. Alter immediately reported the problem to his herbicide supplier, Martin Gilbert. Gilbert then called Wulfkuhle, who came to the Alter farm. Wulfkuhle determined the percentages of injury of the crop in the various fields. He noticed that some fields were 100% injured, and there were others with less than 2% crop injury. Wulfkuhle admitted the damage looked like it had been caused by Dual. Wulfkuhle told Alter to replant his crop and that Ciba-Geigy would pay him $25.00 an acre for replanting costs. Alter replanted 139 acres. Ciba-Geigy asserted a directed verdict should have been granted in its favor on the breach of express and implied warranty claims because the Dual label effectively disclaimed all warranties, and the label prohibited recovery for consequential damages in the form of lost profits.To exclude the implied warranty of merchantability, the disclaimer must mention merchantability and be conspicuous. Ark.Code Ann. § 4-2-316(2) (Repl.1991). To exclude the implied warranty of fitness, the exclusion must be in writing and be conspicuous. Ark.Code Ann. § 4-2-316(2). Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit the warranty shall be construed wherever reasonable as consistent with each other; but negation or limitation is inoperative to the extent that such construction is unreasonable Ark.Code Ann. § 4-2-316(1). There, as here, the question was whether Ciba-Geigy's express warranties (Mayberry's statements) and the disclaimer of all express warranties (Prowl label language) could be reasonably construed as consistent with each other under § 4-2-316(1). If they cannot, the disclaimer is ineffective. First, the nature of the alleged express warranties made must be examined.. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of

9

the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Ark.Code Ann. § 4-2-313(1)(a) (Repl.1991). An affirmation of the seller's opinion or commendation does not create an express warranty. Ark.Code Ann. § 4-2-313(2) (Repl.1991). There are no set criteria to help ascertain opinion from affirmation of fact, and the determination must be made on a case-by-case basis. *Williston on Sales,* § 17-6 (4th ed. 1974). The *Ciba-Geigy* court found that the characterization of the alleged warranty by the salesperson must be determined by a jury. The undersigned concludes that a jury must make the decision in this case, as well. Therefore, Defendants' motion for summary judgment as to breach of express warranty is denied.

Defendant argues that even if a breach of warranty is found, the defendants have effectively limited the remedies available to Plaintiffs. A seller of goods may limit the buyer's remedies for breach of warranty pursuant to Ark.Code Ann. § 4-2-719(1)(a) (Repl.1991). A limitation of remedies provision restricts the remedies available to the buyer once a breach of warranty is established. However, an otherwise valid limitation of remedy is avoided by the buyer if the limitation fails of its essential purpose, *Great Dane Trailer Sales, Inc. v. Pulpwood,* 301 Ark. 436, 785 S.W.2d 13 (1990), or is unconscionable. §4-2-719(3). Unconscionability must be determined in light of general commercial background, commercial needs in the trade or the particular case, the relative bargaining positions of the parties, and other circumstances existing when the contract was made. *Kohlenberger v. Tyson's Foods,* 256 Ark. 584, 510 S.W.2d 555 (1974). The *Kohlenberger* court quoted from *Adams v. J.I. Case Co.*, 125 Ill App.2d 388 , 261 N.E. 2d 1 (1970); "The complaint alleges facts that would constitute a repudiation by the defendants of their obligations under the warranty, that repudiation consisting of their wilful failure or their careless and negligent compliance. It should be obvious that they cannot at once repudiate their obligation under their warranty and assert its

provisions beneficial to them."

The undersigned finds that disputed fact questions preclude any determination on the issue of failure of essential purpose. The commentary to § 4-2-719 states "it is of the very essence of a sales contract that at least minimum adequate remedies be available." In *Dessert Seed Co. v. Drew Farmers Supply,* 248 Ark. 858, 454 S.W.2d 307 (1970), the court held a limitation of liability clause unreasonable, unconscionable, and against public policy when negligence of the seller was clearly established, and the buyer was unable to discover the defect in the goods. Likewise, a determination of unconscionability cannot be made without consideration of fact based issues which are in dispute. *See Young v. Amercian Cyanamid Co.*, 786 F. Supp. 781 (E.D. Ark. 1991). Accordingly, Defendants' motion is denied at this time as to limitations of damages.

THEREFORE, Defendants' Motion for Summary Judgment (DE# 76) is GRANTED in part and DENIED in part as set forth above.

IT IS SO ORDERED this 1st day of August, 2007.

UNITED STATES MAGISTRATE JUDGE